# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

BOBBY BRUCE WHITE, )
)
      Plaintiff, )
) CIVIL ACTION
v. )
) Case No. 07-3182-CM
ROGER WERHOLTZ, et al., )
)
      Defendants. )
_____)

## MEMORANDUM AND ORDER

This 42 U.S.C. § 1983 civil rights action filed by *pro se* plaintiff Bobby Bruce White, an inmate currently housed in the Larned State Hospital ("Larned"), is before the court on Defendants' Motion for Summary Judgment (Doc. 106). The action arises out of an assault by a prison officer at Hutchinson Correctional Facility ("HCF"), plaintiff's transfer to Lansing Correctional Facility ("LCF") and his treatment there, and plaintiff's subsequent transfer to Larned Correctional Mental Health Facility ("LCMHF") and his treatment there. Plaintiff claims that defendants violated his Fifth, Eighth, and Fourteenth Amendment rights.

The court has previously dismissed a number of plaintiff's claims. The claims remaining for disposition are: (1) a due process claim against defendant David McKune relating to plaintiff's involuntary commitment to LCMHF; (2) a due process claim against defendant Karen Rohling relating to plaintiff's acceptance into LCMHF; (3) a retaliation claim against defendant Carolyn Perez; and (4) an Eighth Amendment claim against defendant William Knight. Defendants moved for summary judgment on all of the remaining claims.[1] For the following reasons, the court grants

---

[1] Plaintiff maintains that an additional claim remains viable: his claim against defendant Perez for denied access to the courts. The court disagrees. The court specifically identified the
(continued...)

the motion in part and denies it in part.

I.      **FACTUAL BACKGROUND**

A.      **The Parties.**

As noted above, plaintiff is currently an inmate at Larned. At all times relevant to this lawsuit, defendants held the following positions at the following facilities:

| **Defendant** | **Position** | **Facility** |
|---|---|---|
| William Knight | Corrections Officer | HCF |
| David McKune | Warden | LCF |
| Karen Rohling | Warden | LCMHF |
| Carolyn Perez | Unit Team Manager | LCMHF |

B.      **Timeline of Events.**

The following chart depicts the timeline of events relevant to plaintiff's claims.

| **Date** | **Event** | **Location** |
|---|---|---|
| June 8, 2006 | Defendant Knight poked plaintiff with a pole | HCF |

---

[1] (...continued)
remaining claims in its Memorandum and Order dated October 29, 2009. This claim was dismissed under *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In any event, even if this claim had originally survived defendants' motion to dismiss, the court would grant summary judgment on it now. To show a violation of his right to access the courts, plaintiff must have evidence that a denial or delay prejudiced his pursuit of a lawsuit. *Lewis v. Casey*, 518 U.S. 343, 351 (1996). A plaintiff who cannot show that he was hindered in bringing his claims or that he was otherwise injured by any alleged unconstitutional deficiencies in prison resources lacks standing to bring a claim of denial of access to the courts. *Bedford v. Sharp*, No. 96-6230, 1997 WL 413166, at *3 (10th Cir. July 23, 1997) (citing *Lewis*, 518 U.S. at 351; *Penrod v. Zavaras*, 94 F.3d 1399, 1403 (10th Cir. 1996)). Plaintiff spent nearly fifty hours in the prison library over six months. He was able to file the present suit while incarcerated. Plaintiff has offered nothing but conclusory allegations regarding his inability to conduct research and file legal papers. His claim would fail even if the court considered it in this Memorandum and Order.

| Prior to July 7, 2006 | Plaintiff was transferred from HCF to LCF | HCF/LCF |
|---|---|---|
| November 7, 2006 | Plaintiff received a disciplinary report for breaking a window | LCF |
| November 8, 2006 | Plaintiff attempted self-harm | LCF |
| December 1, 2006 | Plaintiff was given notice that he was being considered for a transfer to LCMHF | LCF |
| December 5, 2006 | Plaintiff's mental health transfer hearing held | LCF |
| December 12, 2006 | Plaintiff was transferred to LCMHF | LCF/LCMHF |
| December 19, 2006 | Plaintiff filed a grievance regarding his transfer from LCF to LCMHF | LCMHF |
| December 29, 2006 | Jeff Byrum responded to plaintiff's grievance | LCMHF |
| February 7, 2007 | Plaintiff received a disciplinary report for refusing to go to work | LCMHF |
| April 20, 2007 | Plaintiff received a disciplinary report for quitting his job | LCMHF |
| April 13, 2007 | Plaintiff filed a grievance against defendant Perez | LCMHF |
| April 24, 2007 | Defendant Perez responded to plaintiff's grievance | LCMHF |
| April 26, 2007 | Defendant Perez gave plaintiff a negative KDOC Program Classification Review | LCMHF |

## **C.** **Facts Relating to Plaintiff's Eighth Amendment Claims Against Defendant Knight.**

Plaintiff was scheduled to move to a different cellhouse on June 8, 2006. Defendant Knight, who claims he was unaware of plaintiff's mental health issues at the time, attempted to talk with plaintiff to calm him down for the transfer. During the conversation, another inmate brought defendant Knight a wooden pole used to open and close windows in the cellhouse. Plaintiff asked defendant Knight if he planned to use the stick to kill him. Resting the pole on the bars of plaintiff's

cell, defendant Knight asked plaintiff if he thought he was going to kill him. Defendant Knight then inserted the wooden pole through the bars and poked plaintiff with it. Plaintiff responded by breaking the pole in two.

Defendant Knight does not contend that plaintiff failed to exhaust administrative remedies with respect to this claim.

**D.      Facts Relating to the Due Process Mental Health Transfer Hearing.[2]**

Kurt Holthaus was plaintiff's corrections counselor at LCF from June 27, 2006 through December 12, 2006. He witnessed a number of incidents that made him concerned for plaintiff's mental health. For example, at one point, plaintiff repeatedly stabbed himself with a pencil. Another time, plaintiff attempted to hang himself with a pair of socks.

Staff at LCF determined that plaintiff's mental health could be better served at LCMHF. In accordance with policy, they decided to hold a due process hearing before the transfer. Plaintiff, however, refused to sign the documents associated with the hearing and did not actively participate in the hearing. Plaintiff's KDOC representative, Corrections Counselor II ("CCII") Myron Alford, claims that he was present when plaintiff was served his paperwork. According to CCII Alford, he explained the procedures and his role. Plaintiff states that he does not remember CCII Alford's presence or the explanation. CCII Alford was also present at the hearing.

Plaintiff's mental health transfer hearing was conducted on December 5, 2006. CCII Alford states that he was available to help plaintiff, but plaintiff failed to ask for help. Plaintiff declined to answer questions or make statements without an attorney.

On December 19, 2006, plaintiff filed a grievance regarding the transfer, stating:

---

[2] A number of the facts presented below are not properly supported by the record, as is explained in more detail later in this Memorandum and Order. The court discusses them here for background and context.

-4-

> I was moved from LCF placed in a mental health facility on crisis level in seg. without a proper hearing in a court of law and I was denied assistance of legal counsel per my Constitutional rights in regards to treatment of prisoners. Further, because of the living conditions, I have had to endure, I have been denied my human and civil rights. I have previously brought this up to the Unit Team at intake to LCMHF.

(Doc. 107, Ex. P.) CCII Jeff Byrum responded to plaintiff's grievance, denying plaintiff relief. Defendants contend that plaintiff did not pursue the grievance any further, but defendants did not attach or cite any evidence in support of this proposition.

### E.     **Facts Relating to Plaintiff's Retaliation Claim Against Defendant Perez.**

Plaintiff filed a grievance against defendant Perez on April 13, 2007. In that grievance, he stated:

> I, Bobby B. White had two grievances I wished to file with Unit Team Perez. I went to her open door and she asked what I needed. I told her I had a couple of grievances I needed to file with her. She took them and placed them in her file tray. I then told her I needed the receipt stubs. She said she didn't have time and I wasn't on her schedule. I said fine I'll have the shift officer sign for them. She said no your [sic] going to leave. I waited for the shift officer who was out of her locked office in the day hall to sign my grievances and then Unit Team Perez became loud and told me to go at that time the shift officer went to her locked office and entered and signed the receipt for the grievances. . . . Officer Moos and numerous inmates witnessed the incident. I have been deprived due process and been stressed with unnecessary anxiety in a mental health facility.

(Doc. 107, Ex. D.)

On April 24, 2007, defendant Perez responded to plaintiff's grievance, generally denying the allegations. The warden agreed with defendant Perez, as did the Secretary of Corrections when plaintiff appealed the disposition of the grievance.

On April 26, 2007, defendant Perez performed a KDOC Program Classification Review. In the review, she stated:

> Inmate White has resided on the F-3 living unit for almost five months and is currently on full-incentive status. Inmate White is not eligible to earn good time, but

> he will need to make some improvements upon his work performance and his
> interaction with staff members at times. He received four disciplinary reports during
> this review period in regard to these issues. Inmate White does not feel that he
> should have to work as well as attend mental health counseling. He has reported that
> at "other facilities" inmates are not required to work if they are involved in any other
> programming. Inmate White is currently required to attend one hour of weekly group
> mental health counseling and three hours of afternoon activities. If inmate White
> continues to have work performance issues and/or continues to make other decisions
> not to participate in the mental health program at LCMHF, staffing committee will
> consider reducing his current incentives. . . .

(Doc. 107, Ex. H.) Although defendant Perez referred to "four disciplinary reports during this period," it appears that the correct number would be either two or three. The list of reports in the Program Classification Review states that it is for the past six months. But the review period is January through April 2007. In other words, it is unclear whether the November 7, 2006 disciplinary report should have been counted. In any event, the court believes that "four disciplinary reports" is a misstatement based on the evidence in the record.

Defendant Perez does not contend that plaintiff failed to administratively exhaust this claim.

## II.  STANDARD OF REVIEW

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

Where, as here, the plaintiff proceeds *pro se*, the court construes the *pro se* pleadings liberally. *Hall v. Doering*, 997 F. Supp. 1445, 1451 (D. Kan. 1998) (citing *Hughes v. Rowe*, 449 U.S. 5, 9–10 (1980)). On the other hand, a plaintiff's *pro se* status does not relieve him from

complying with this court's procedural requirements. *Barnes v. United States*, 173 F. App'x 695, 697 (10th Cir. 2006) (citations omitted); *see also Santistevan v. Colo. Sch. of Mines*, 150 F. App'x 927, 931 (10th Cir. 2005) (holding that a *pro se* litigant must follow the same rules of procedure as other litigants).

## III. DISCUSSION

### A. Official Capacity Claims.

It is not clear whether plaintiff brings this case against defendants in only their individual capacities, or also in their official capacities. To the extent that plaintiff has sued them in their official capacities, such claims are barred by the Eleventh Amendment. When a suit is brought against state officials in their official capacities, the real party in interest is the state. *Kentucky v. Graham*, 473 U.S. 159, 166–67 (1985). Eleventh Amendment immunity bars federal court actions against a state unless the state waives immunity. U.S. Const. amend. XI; *Sturdevant v. Paulsen*, 218 F.3d 1160, 1164 (10th Cir. 2000). The State of Kansas has not waived its immunity to suit in this case. Defendants are therefore immune from suit in their official capacities.

### B. Eighth Amendment Claim Against Defendant Knight.

Plaintiff's Eighth Amendment claim against defendant Knight is based on his allegation that defendant Knight poked him with a stick through the bars of his cell. Defendant has analyzed plaintiff's claim as a claim for excessive force. The claim does not squarely fit within the excessive force framework, as the situation did not involve initially-aggressive behavior by plaintiff or something in the nature of a prison riot; defendant Knight was not in a position of quickly evaluating safety concerns or restoring order. *See DeSpain v. Uphoff*, 264 F.3d 965, 978 (10th Cir. 2001). Nor does the claim fit within the "conditions of confinement" framework. This claim is not about plaintiff's living conditions. Nevertheless, the court determines that because defendant Knight was

-7-

allegedly taking physical action against plaintiff with a pole, the most appropriate Eighth Amendment analysis to use is that applied to claims of excessive force.

The test for excessive force is "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986) (citation and internal quotation marks omitted); *see also Wilkins v. Gaddy*, 130 S. Ct. 1175, 1178 (2010) (citing *Hudson v. McMillian*, 503 U.S. 1, 6 (1992)). The court balances the need for force with the force used. *Mitchell v. Maynard*, 80 F.3d 1433, 1440 (10th Cir. 1996). Whether a prisoner suffered injury and the extent of any injury are relevant inquiries when determining whether an Eighth Amendment violation occurred. *Wilkins*, 130 S. Ct. at 1187 (citing *Hudson*, 503 U.S. at 7). A push or shove with no discernible injury, for example, may not constitute excessive force. *Hudson*, 503 U.S. at 9–10. The constitutional question for the court is whether a defendant engaged in unnecessary and wanton infliction of pain. *DeSpain*, 263 F.3d at 978. If a defendant caused a prisoner to suffer unnecessary and wanton infliction of pain, the prisoner need not allege significant physical injuries. *Northington v. Jackson*, 973 F.2d 1518, 1524 (10th Cir. 1992).

Because there is no apparent legitimate justification for defendant Knight's actions, the court cannot grant summary judgment on this claim. "Where no legitimate penological purpose can be inferred from a prison employee's alleged conduct . . ., the conduct itself constitutes sufficient evidence that force was used 'maliciously and sadistically for the very purpose of causing harm.'" *Giron v. Corr. Corp. of Am.*, 191 F.3d 1281, 1290 (10th Cir. 1999) (quoting *Whitley*, 475 U.S. at 320–21). Plaintiff alleges not only that he felt minor pain, but also that he suffered mentally because of the incident. Genuine issues of material fact exist that require this claim to be tried before a jury.

Defendant Knight also asks the court to grant summary judgment on plaintiff's claims for

compensatory damages relating to this claim, based on *Searles v. Van Bebber*, 251 F.3d 869, 876 (10th Cir. 2001). Defendant Knight is correct that compensatory damages are not recoverable for mental or emotional injury under 42 U.S.C. § 1983 unless the mental or emotional injury is accompanied by physical injury. 42 U.S.C. § 1997e(e). But plaintiff does not appear to seek compensatory damages for this claim. The pretrial order lists actual damages for other claims, as well as nominal and punitive damages. It does not appear that compensatory damages are at issue for this claim.

**C.    Due Process Claims Against Defendants McKune and Rohling.**

Defendants claim that they are entitled to summary judgment on plaintiff's due process claims both because (1) plaintiff failed to administratively exhaust the claims; and (2) the claims fail as a matter of law.

1.    Exhaustion of Administrative Remedies.

The Prison Litigation Reform Act ("PLRA") requires a prisoner to exhaust available administrative remedies before filing an action with respect to prison conditions. 42 U.S.C. § 1997e(a); *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002). "An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under PLRA for failure to exhaust administrative remedies." *Jernigan*, 304 F.3d at 1032 (citation omitted). The prison's administrative requirements define exhaustion in any given case. *Jones v. Bock*, 549 U.S. 199, 218 (2007). A prisoner must fully comply with the exhaustion requirements; substantial compliance will not save a claim. *Hines v. Sherron*, 372 F. App'x 853, 856 (10th Cir. 2010) (citation omitted). Defendants bear the burden of showing that plaintiff failed to exhaust his administrative remedies. *See Roberts v. Barreras*, 484 F.3d 1236, 1241 (10th Cir. 2007).

Plaintiff filed a grievance about his transfer to LCMHF. He received a response to that

-9-

grievance, but then appears to have never completed the process. Kansas has three steps to its grievance procedures: (1) attempted resolution at the unit team level; (2) complaint to the warden; and (3) appeal to the secretary of corrections. K.A.R. § 44-15-102. The record suggests—and plaintiff's response does not deny—that plaintiff stopped at the first step.

While the absence of evidence in the record supports a finding that plaintiff failed to exhaust his administrative remedies with respect to these claims, the court cannot grant summary judgment at this time. Defendants bear the burden of showing exhaustion. *See Barreras*, 484 F.3d at 1241. Defendants include as a material uncontroverted fact an assertion that plaintiff failed to complete the process. But defendants cited no evidence for the proposition. Instead, defendants rely on plaintiff's failure to offer any evidence of complaints and appeals. Under *Barreras*, this approach improperly shifts the burden to plaintiff to affirmatively show exhaustion. This is inconsistent with controlling law.

Based on plaintiff's response to defendants' motion, the court suspects that plaintiff failed to exhaust these claims, and that they should be barred from review. But the court cannot make that finding based on the record before it. Summary judgment is denied without prejudice on this issue.

2.  Merits of the Claims.

The court next turns to the merits of the due process claims. Plaintiff brings the claims pursuant to both the Fifth and Fourteenth Amendments. The Fifth Amendment, however, is applicable only to the federal government—not the states. *Dusenbery v. United States*, 534 U.S. 161, 167 (2002); *Ward v. Anderson*, 494 F.3d 929, 932 n.3 (10th Cir. 2007). This case only involves state actors. Plaintiff's Fifth Amendment due process claims are therefore dismissed, although the dismissal is inconsequential, as the Fifth and Fourteenth Amendments provide the same due process protection. *See Ward*, 494 F.3d at 932 n.3.

When evaluating a procedural due process claim, the court asks two questions: (1) Did the plaintiff possess a property interest protected by the Due Process clause? (2) Did the plaintiff receive appropriate process? *Camuglia v. City of Albuquerque*, 448 F.3d 1214, 1219 (10th Cir. 2006) (citation omitted). Here, the answer to the first question—yes—is not contested. To determine the answer to the second question, the court must consider whether defendants provided plaintiff with the following requirements: (1) written notice; (2) an opportunity to be heard; (3) the ability to present evidence and cross-examine witnesses; (4) a fact-finder's written statement; (5) assistance; and (6) written notice of the rights. *See Vitek v. Jones*, 445 U.S. 480, 488–91 (1980).

In this case, plaintiff disputes whether he was given assistance at the hearing. During the hearing, plaintiff refused to participate unless he was represented by counsel. Legal counsel, however, is not required. *Id.* at 500 ("[A]lthough the State is free to appoint a licensed attorney to represent an inmate, it is not constitutionally required to do so."). Qualified and independent assistance is all that is required. *Id.* CCII Alford states that this was his role. He was present and available, but plaintiff chose not to use him during the hearing. Plaintiff, on the other hand, claims that he was unaware that CCII Alford was his representative at the hearing.

The problem with the parties' contrary positions is that neither position is properly supported by evidence. CCII Alford signed an "affidavit" explaining his role before and during the hearing. But the affidavit is neither sworn nor signed under penalty of perjury, rendering it insufficient to support summary judgment. *See Jones v. Hernanzez*, No. 07-2042, 2007 WL 4269052, at *1 n.1 (10th Cir. Dec. 6, 2007); *see also* Fed. R. Civ. P. 56(e); 28 U.S.C. § 1746. Although the Notary Public states that the affidavit was "subscribed and sworn to," CCII Alford does not state within the affidavit that his statements are true. And plaintiff's "evidence" is contained in his brief opposing summary judgment. Plaintiff also does not swear or declare the truth of the statements in his brief.

-11-

Unsworn statements in a brief are insufficient evidence to defeat summary judgment. *Tavery v. United States*, 32 F.3d 1423, 1433 (10th Cir. 1994) (citations omitted).

The court is unable to resolve this issue without proper support in the record. Because defendants bear the burden of showing they are entitled to summary judgment, the court denies summary judgment on these claims, again without prejudice. The court need not address the remainder of plaintiff's arguments why he failed to receive due process.

### D.   **Retaliation Claim Against Defendant Perez.**

In order to prevail on his retaliation claim against defendant Perez, plaintiff must prove:

(1) that the plaintiff "was engaged in constitutionally protected activity"; (2) that the defendant's actions caused the plaintiff "to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity"; and (3) that the "defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct."

*Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000) (citations omitted).

Plaintiff engaged in constitutionally protected activity by filing a grievance against defendant Perez on April 13, 2007. *Smith v. Maschner*, 899 F.2d 940, 947 (10th Cir. 1990) ("It is also one aspect of the First Amendment right to petition the government for redress of grievances."). But merely showing protected activity is insufficient. Plaintiff must also show an adverse action and a nexus between the two. Plaintiff has done neither.

First, plaintiff has not offered any evidence of the impact of the negative April 26, 2007 KDOC Program Classification Review. While defendant Perez may have stated that plaintiff had four disciplinary reports during the review period, when he only had two or three, she also listed the specific reports, with dates, allowing the reader to make an independent determination of the number of disciplinary reports that plaintiff received. Moreover, plaintiff has not identified any harm that he suffered by nature of the negative report.

-12-

Even if the court were to assume that the KDOC Program Classification Review was an adverse action, plaintiff has not identified any causal link between the grievance and his negative review other than time. Temporal proximity is not enough in this case. *See Wright v. McCotter*, No. 98-4095, 1999 WL 76904, at *1 (10th Cir. Feb. 18, 1999) ("Standing alone, some temporal proximity between Plaintiff's grievance and lawsuit filings and the administrative segregation does not constitute sufficient circumstantial proof of a retaliatory motive to state a claim."); *see also Friedman v. Kennard*, 248 F. App'x 918, 922 (10th Cir. 2007). The court grants summary judgment on the retaliation claim against defendant Perez.

**IT IS THEREFORE ORDERED** that Defendants' Motion for Summary Judgment (Doc. 106) is granted in part and denied in part. Defendant Perez is dismissed from the case. Plaintiff's Fourteenth Amendment due process claims and Eighth Amendment claim remain for trial.

**IT IS FURTHER ORDERED** that appointment of counsel is now appropriate for trial. The court will appoint counsel for plaintiff to handle the trial of the remaining claims.

Dated this 2nd day of December 2010, at Kansas City, Kansas.

**s/ Carlos Murguia**
**CARLOS MURGUIA**
**United States District Judge**